**Todd SCHWANKE, Relator,**

v.

**MINNESOTA DEPARTMENT OF ADMINISTRATION, Respondent.**

**No. A12–2062.**

Court of Appeals of Minnesota.

July 29, 2013.

Richard T. Wylie, Minneapolis, MN, for relator.

Lori Swanson, Attorney General, Nathan J. Hartshorn, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Department of Administration.

Lon Thiele, Steele County Sheriff, Owatonna, MN, pro se respondent.

Considered and decided by HUDSON, Presiding Judge; STAUBER, Judge; and WILLIS, Judge.[*]

## OPINION

HUDSON, Judge.

Relator, a government employee, challenges respondent department of administration's rejection of his appeal regarding the accuracy and completeness of information contained in his employment evaluation, arguing that respondent erred by dismissing his appeal without ordering a

contested-case hearing and by concluding that an employment evaluation cannot be challenged under the MGDPA. Because the department of administration exceeded its statutory authority by dismissing relator's appeal without ordering a hearing, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

Relator Todd Schwanke is a sergeant with the Steele County Sheriff's Office. On February 1, 2012, Schwanke received a generally negative review of his performance for calendar year 2011 from Chief Deputy Scott Hanson. The evaluation rated Schwanke in 15 of 23 possible categories. Schwanke was rated as "below standards" in seven categories, "meets standards" in five categories, "above standards" in two categories, and "exceeds standards" in one category. Each rating was supported by comments referring to specific incidents, performance data, or patterns of behavior.

Schwanke submitted a challenge to the accuracy or completeness of the evaluation to respondent Sheriff Lon Thiele, the responsible authority for the data under the MGDPA. *See* Minn.Stat. §§ 13.02, subd. 16(b), .04, subd. 4(a) (2012). Schwanke challenged each negative rating, referred to supplemental materials to support his claims, and challenged the accuracy of several comments. Thiele responded that "the evaluation was given thorough consideration," that he supported the conclusions of the original evaluation, and that therefore the evaluation was "complete."

Schwanke appealed the sheriff's determination to the department of administration under Minn.Stat. § 13.04, subd. 4(a),

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

and filed an accompanying statement of dispute that included approximately 300 pages of exhibits. Though the parties dispute whether any of these materials were provided to the sheriff in Schwanke's original challenge, Schwanke acknowledges that his appeal to the department of administration raised claims and included exhibits that had not been submitted to the sheriff. In a phone call to Schwanke, the department of administration stated that it would not consider any claims or exhibits that were not part of Schwanke's initial challenge.

The department of administration subsequently sent a letter to Schwanke refusing to accept his appeal. Respondent stated that a data challenge was "not the proper venue to challenge a government entity's policies and procedures." The letter further stated that it was improper for Schwanke "to challenge the thoughts, impressions, perceptions, observations, and/or opinions made by a supervisor contained in a performance evaluation." Respondent concluded that Schwanke should consult his employment contract and collective-bargaining agreement for policies concerning challenging a performance evaluation. This certiorari appeal follows.

## ISSUES

I. Did the department of administration exceed its statutory authority by dismissing Schwanke's appeal under Minn. Stat. § 13.04, subd. 4(a), without ordering a contested-case hearing?

II. Does a performance evaluation constitute government data that a government employee, as the individual subject of that data, may contest under Minn.Stat. § 13.04, subd. 4(a)?

III. Did the department of administration exceed its statutory authority by refusing to consider issues and exhibits raised in Schwanke's appeal that were not submitted to the responsible authority in his initial data challenge?

## ANALYSIS

### I

■ Schwanke argues that the department of administration exceeded its statutory authority by dismissing his appeal without ordering a contested-case hearing. "Whether an administrative agency has acted within its statutory authority is a question of law that we review de novo." *In re Hubbard,* 778 N.W.2d 313, 318 (Minn.2010) (quotation omitted). The department of administration argues that it is entitled to a deferential standard of review because we are reviewing the decision of an agency, citing *In re Certificate of Auth. of Mut. Protective Ins. Co.,* 633 N.W.2d 567, 569 (Minn.App.2001). We disagree because Schwanke raises an issue of law. *See id.* (stating that in considering a question of law, appellate courts "are not bound by the decision of the agency and need not defer to agency expertise") (quotation omitted). Respondent next argues that its interpretation of Minn.Stat. § 13.04, subd. 4, is entitled to deference, citing *George A. Hormel & Co. v. Asper,* 428 N.W.2d 47, 50 (Minn.1988). This argument is similarly without merit, as the Minnesota Supreme Court has observed that no deference is given to an agency's interpretation of a statute when "we are confronted with the threshold question of whether the legislature has granted an agency the authority to take the action at issue." *Hubbard,* 778 N.W.2d at 318 n. 4 (rejecting application of *George A. Hormel* ).

An individual subject of government data is entitled to challenge the accuracy and completeness of that data under section 13.04, which provides in part:

An individual subject of the data may contest the accuracy or completeness of public or private data. To exercise this right, an individual shall notify in writing the responsible authority describing the nature of the disagreement. The responsible authority shall within 30 days either: (1) correct the data ... or (2) notify the individual that the authority believes the data to be correct....

The determination of the responsible authority may be appealed pursuant to the provisions of the Administrative Procedure Act relating to contested cases. Upon receipt of an appeal by an individual, the commissioner [of administration] shall, before issuing the order and notice of a contested case hearing required by chapter 14, try to resolve the dispute through education, conference, conciliation, or persuasion. If the parties consent, the commissioner may refer the matter to mediation. Following these efforts, the commissioner shall dismiss the appeal or issue the order and notice of hearing.

Minn.Stat. § 13.04, subd. 4(a).

The department of administration argues that the last sentence grants the commissioner the authority to summarily dismiss an appeal rather than ordering a hearing. We reject the department of administration's interpretation for several reasons.

First, the department's interpretation of the last sentence of subdivision 4(a) cannot be reconciled with language two sentences earlier stating that, upon receipt of an appeal, "the commissioner shall [attempt to resolve the dispute] before issuing the order and notice of a contested case hearing *required by chapter 14.*" *Id.* (emphasis added). This acknowledgment that the Minnesota Administrative Procedure Act (MAPA), Minn.Stat. §§ 14.001–.69 (2012), requires the commissioner to order a con-

tested case hearing in all cases demonstrates that dismissal would only be appropriate if the commissioner's efforts to resolve the dispute are successful, thereby rendering the challenge moot.

■ Second, the department's interpretation is inconsistent with MAPA. Section 13.04, subdivision 4, states that data challenges are governed by the contested-case provisions of MAPA, Minn.Stat. §§ 14.57–.62. Therefore "[to determine the extent of the commissioner's jurisdiction and authority" under the MGDPA, "we must look at both the data practices act and the administrative procedure act]." *Hennepin Cnty. Cmty. Servs. Dep't v. Hale,* 470 N.W.2d 159, 165 (Minn.App.1991) (citations omitted), *review denied* (Minn. July 24, 1991). Under MAPA, Schwanke was entitled to "an opportunity for hearing after reasonable notice." Minn.Stat. § 14.58. At the hearing, Schwanke was entitled to "present evidence and argument with respect thereto." *Id.* And this hearing was required to take place before an administrative-law judge (ALJ). *See* Minn.Stat. § 14.50 (stating that contested-case hearings are to take place in front of an ALJ). Therefore the department of administration exceeded its authority by denying Schwanke the right to present his challenges at a contested-case hearing.

Third, the rules governing the MGDPA promulgated by the department of administration do not support its own interpretation. *See* Minn. R. 1205.0100–.2000 (2011). An individual appeal of an adverse determination by a responsible authority brought under Minn.Stat. § 13.04, subd. 4, is governed by Minn. R. 1205.1600. While the rules permit dismissal of "any sham, capricious, or frivolous case, or any case not within the jurisdiction of the department of administration" after "all parties have had an opportunity to present their

views," that authority is exclusive to the ALJ. *Id.,* subp. 4.

Fourth, the department's interpretation contradicts the procedural rules governing contested cases, including data challenges. *See* Minn.Stat. § 13.04, subd. 4 (stating that data challenges are governed by procedural rules for contested-case hearings). Pursuant to the authority granted by Minn.Stat. § 14.51, the chief administrative-law judge has promulgated rules governing the procedural conduct of contested-case hearings. *See* Minn. R. 1400.5010–.8400 (2011). Required procedures "include the right to be heard after reasonable notice, the production of witnesses and documents, the taking of evidence, examination and cross-examination of witnesses, representation by counsel, presentation of arguments, and decision upon the record." *Hale,* 470 N.W.2d at 165 (citing Minn. R. 1400.5100–.8300 (1983)). The department of administration denied Schwanke these procedural rights by dismissing his case without a hearing.[1]

Schwanke argues that the commissioner's authority to dismiss a data challenge under Minn.Stat. § 13.04, subd. 4, exists only where efforts to resolve the dispute have succeeded, rendering the challenge moot. This interpretation is consistent with the language of section 13.04, which places the authority to dismiss an appeal in the context of the requirement that the commissioner attempt "to resolve the dispute through education, conference, conciliation, or persuasion." Minn.Stat. § 13.04, subd. 4(a). The statute then provides that "[f]ollowing these efforts [to resolve the dispute], the commissioner shall dismiss the appeal or issue the order and

notice of hearing." Considering the acknowledgment earlier in subdivision 4 of an individual's right to a hearing, the only reasonable interpretation is that the commissioner may dismiss an appeal only if the dispute has been resolved. The power granted to the commissioner to dismiss an appeal is therefore analogous to the authority granted an ALJ to "recommend dismissal where the case or any part thereof has become moot or for other reasons." Minn. R. 1400.5500(K).

■ We conclude that the department of administration's authority to dismiss an appeal under Minn.Stat. § 13.04, subd. 4(a), before ordering a contested-case hearing, is limited to those instances where its efforts to resolve the dispute have succeeded, rendering the challenge moot. The department of administration therefore exceeded its statutory authority by dismissing Schwanke's appeal.

**II**

■ Relator argues that the department of administration erred by determining that Schwanke could not challenge the accuracy and completeness of his employee evaluation under Minn.Stat. § 13.04, subd. 4(a). Because the department of administration lacked the statutory authority to dismiss Schwanke's appeal, and no contested-case hearing took place, we have no record upon which to determine whether this determination was made in error. We therefore limit our review to the issue of statutory interpretation raised by the department's dismissal of Schwanke's appeal: whether the performance evaluation of a

---

1. These procedural rights are subject to limitation by the ALJ when consistent with law. *See* Minn. R. 1400.5500 (authorizing the ALJ to deny motions for discovery, recommend summary disposition "where there is no genuine issue as to any material fact," and recommend dismissal of a case). But the department of administration has no comparable authority before ordering a contested-case hearing. *See* Minn.Stat. § 13.04, subd. 4; Minn. R. 1205.1600.

government employee is government data, the accuracy or completeness of which may be contested by that employee, as an individual subject of that data, under Minn. Stat. § 13.04, subd. 4.

■ This is an issue of statutory interpretation and therefore fully reviewable by appellate courts. *Hibbing Educ. Ass'n v. Pub. Emp't Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). While we are not bound by the department of administration's legal conclusions, "the manner in which an agency has construed a statute may be entitled to some weight when the statutory language is technical in nature and the agency's interpretation is one of longstanding application." *Lolling v. Midwest Patrol*, 545 N.W.2d 372, 375 (Minn. 1996). But the statutory language here is not technical in nature, and there is no indication that the department of administration's interpretation has been applied before this case. We therefore review de novo the department's determination that the performance evaluation of a government employee may not be challenged under Minn.Stat. § 13.04, subd. 4.

The MGDPA vests final agency authority to determine the accuracy and completeness of government data in the commissioner of administration. Minn.Stat. § 13.04, subd. 4. This authority extends to public data on individuals and private data on individuals. *Id.* "Public data on individuals" means data that are accessible to the public. Minn.Stat. § 13.02, subd. 15 (2012). "Private data on individuals" are not accessible to the public, but are accessible to the individual subject of the data. *Id.*, subd. 12 (2012). While the statute does not define data, "data on individuals" is defined as

all government data in which any individual is or can be identified as the subject of that data, unless the appearance of the name or other identifying

data can be clearly demonstrated to be only incidental to the data and the data are not accessed by the name or other identifying data of any individual.

*Id.*, subd. 5 (2012). "Government data" is defined as "all data collected, created, received, maintained or disseminated by any government entity." Minn.Stat. § 13.02, subd. 7 (2012). Steele County is a government entity. *Id.*, subd. 7a (2012). Personnel data maintained because an individual is an employee of a government entity constitute government data on individuals. Minn.Stat. § 13.43, subd. 1 (2012).

The employee evaluation created by officers of Steele County is data created and maintained by a government entity. As an individual identified as the subject of that data, Schwanke may contest the accuracy and completeness of his evaluation under Minn.Stat. § 13.04, subd. 4(a). *See also Fieno v. State,* 567 N.W.2d 739, 742 (Minn. App.1997) (stating that a performance evaluation referencing a complaint about an employee is public data under the MGDPA); 17 Stephen F. Befort, *Minnesota Practice: Employment Law & Practice* § 4:28 (3d ed.2011) (stating that under Minn.Stat. § 13.04, subd. 4, public employees may challenge the accuracy and completeness of personnel-file data).

*Opinions*

The department of administration argues that a performance evaluation is entirely subjective, representing the opinion of a supervisor, and therefore its accuracy may not be contested. This argument has some merit, but this is ultimately a factual question to be determined on a case-by-case basis by the ALJ, and we refuse to adopt a per se rule that a performance evaluation is inherently subjective and therefore not subject to a data challenge, especially given the plain language of Minn.Stat. § 13.04, subd. 4(a), stating that

a government employee may contest the accuracy or completeness of public or private data.

*Alternate remedies*

■ In its letter dismissing Schwanke's appeal, the department of administration stated that government employees "should consult their employment contract and collective bargaining agreement regarding the policies and procedures for creating and completing an employee performance evaluation." While the meaning of this statement is unclear, it implies that a challenge to the accuracy of data may not be brought if there are other avenues for bringing the challenge or that such remedies must be exhausted before a challenge may be brought under Minn.Stat. § 13.04, subd. 4(a). We find no support for either proposition within the statute or caselaw.

As a practical matter, as part of the efforts to "resolve the dispute through education, conference, conciliation, or persuasion" before ordering a hearing, the commissioner may encourage the individual data subject and the responsible authority to pursue a resolution through alternative avenues. Minn.Stat. § 13.04, subd. 4(a). While it may have been appropriate for the commissioner to encourage Schwanke to challenge the evaluation through his employer or union, because the commissioner may only refer a matter to mediation "[i]f the parties consent," the commissioner may neither require Schwanke to pursue alternative avenues of relief nor dismiss his appeal for failure to do so. *Id.*

**III**

■ In its appellate brief, the department of administration argues that, even if its stated reasons for dismissing Schwanke's appeal were improper, dismissal was appropriate because Schwanke "raised issues and cited documents that were never provided to the responsible authority," violating the department's policy that it "does not review accuracy-and-completeness claims or evidence that have not first been submitted to the responsible authority." Schwanke argues that the department lacks the statutory authority to dismiss or narrow the scope of an appeal on these grounds. We agree.

The department of administration's position is that, procedurally, it should operate like an appellate court in hearing challenges to the responsible authority's accuracy-and-completeness determination, and therefore may limit the record and arguments to what was presented to the responsible authority. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (issues not raised to the district court will not be considered on appeal); Minn. R. Civ.App. P. 110.01 (defining the record as the papers, exhibits, and transcripts submitted to the trial court). It supports its position by relying upon statutory language referring to a data subject's challenge to the responsible authority's determination as an "appeal." Minn.Stat. § 13.04, subd. 4.

This argument incorrectly assumes that a data challenge is governed by appellate rules and caselaw simply because it is labeled an "appeal" by Minn.Stat. § 13.04, subd. 4(a). The statute explicitly states that data challenges are to be governed by the contested-case provisions of MAPA. Minn.Stat. § 13.04, subd. 4(a). At a contested-case hearing, each party has the right to produce witnesses and documents and examine and cross-examine witnesses. *See* Minn. R. 1400.5010–.8400; *Hale,* 470 N.W.2d at 165. The record in a contested-case hearing includes not only the papers initially "filed with the agency," but also "subsequent filings, testimony, and exhibits." Minn.Stat. § 14.58. There is no limitation on when evidence or arguments must be presented; "[a]ll evidence ... which is offered into evidence by a party to a contested case proceeding, shall be made

a part of the hearing record of the case." Minn.Stat. § 14.60.

As used in section 13.04, the word "appeal" means "the removal of a suit from an inferior court ... to a superior court, and placing the case in the latter court to be again tried de novo upon its merits, just as though it had never been tried in the inferior court." *Hale*, 470 N.W.2d at 165 (quotation omitted). A data challenge should therefore operate as a "trial de novo." *Id.* The department of administration therefore lacked the statutory authority to limit the arguments or evidence that Schwanke could present in his appeal under Minn.Stat. § 13.04, subd. 4(a), or to dismiss his appeal because it raised new issues or presented additional evidence.[2]

**DECISION**

Because the department of administration exceeded its statutory authority by dismissing Schwanke's appeal without ordering a hearing, we reverse and remand to the department of administration for further proceedings consistent with this opinion.

**Reversed and remanded.**

2. We agree with the department that data subjects should be encouraged to provide complete information to the responsible authority to maximize the possibility of resolving the dispute before ordering a hearing. Therefore, under its statutory authority to attempt to resolve the dispute through "edu-

cation, conference, conciliation, or persuasion," Minn.Stat. § 13.04, subd. 4, it would have been appropriate for the department to require Schwanke to provide the sheriff with a copy of his appeal and accompanying exhibits, and to ensure that the sheriff gave these materials due consideration.